IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| JORGE CALDERON RIVERA,<br><br>              Petitioner,<br><br>vs.<br><br>KRISTI NOEM, in their official capacity as Secretary of the United States Department of Homeland Security; PAMELA BONDI, in their official capacity as Attorney General of the United States; TODD M. LYONS, in their official capacity as Acting Director of the United States Immigration and Customs Enforcement; DAVID EASTERWOOD, in their official capacity as Acting St. Paul Field Office Director for Enforcement and Removal Operations, United States Immigration and Customs Enforcement; and CAROLYN SOMMER, in their official capacity as Acting Warden of the McCook Detention Center;<br><br>              Respondents. | 4:26CV3055<br><br><br>**MEMORANDUM AND ORDER** |

      This matter is before the Court on Petitioner Jorge Calderon Rivera's (Calderon Rivera) petition for a writ of habeas corpus. (Filing No. 1). Calderon Rivera, a noncitizen facing removal from the United States, is detained by U.S. Immigrations and Customs Enforcement. He alleges his detention is unlawful because he is detained without being afforded a bond hearing. For the reasons set forth below, his petition will be granted in part, and the Court will order that he receive a bond hearing.

BACKGROUND

Calderon Rivera is a Salvadoran citizen. (Filing No. 1 at 4). He has lived in the United States since 2016. (Filing No. 1 at 4). Before his detention, he lived in Omaha, Nebraska. (Filing No. 1 at 4).

In January 2026, the "Omaha Fugitive Operations Team" encountered Calderon Rivera while "conducting enforcement operations" in Omaha. (Filing No. 9 at 3). Calderon Rivera admitted to being a Salvadoran citizen and national illegally present in the United States during a field interview. (Filing No. 1-4 at 3). Officers then detained him. (Filing No. 1-4 at 3). U.S. Immigration and Customs Enforcement (ICE) also issued a warrant for Calderon Rivera's arrest and later initiated removal proceedings against him.[1] (Filing No. 9-1; Filing No. 9-2). In a Notice to Appear, ICE alleged that Calderon Rivera was subject to removal as "an alien present in the United States without being admitted or paroled" and without "possession of" a "valid entry document" like a visa, reentry permit, or border crossing card "required by the Immigration and Nationality Act[.]" (Filing No. 9-1 at 1, 4). He remains in custody at the McCook Detention Center in McCook, Nebraska. (Filing No. 1 at 3).

Anticipating that the immigration judge would deny any request for release on bond during the pendency of removal proceedings under *Matter of Yajure Hurtado*, 29 I. & N. Dec. 216 (BIA 2025), Calderon Rivera seeks a writ of habeas corpus from this Court. He alleges his detention is unlawful in that Respondents are "subjecting [him] to mandatory detention [under 8 U.S.C. § 1225(b)] and have denied him a bond hearing[.]" (Filing No. 1 at 2). He seeks immediate release, or alternatively, an order directing Respondents to provide him with a bond hearing within seven days. (Filing No. 1 at 24). The Court directed Calderon Rivera to serve his petition on Respondents (Filing No. 3) and ordered Respondents to file a return on the petition within three business days

---

[1] The day he was detained, ICE offered Calderon Rivera an "[i]ncentivized [v]oluntary [d]eparture" instead of initiating removal proceedings against him. (Filing No. 9 at 4). Calderon Rivera accepted, so ICE booked him a "transfer seat" for removal to El Salvador. (Filing No. 9 at 4). The day before his flight, however, Calderon Rivera indicated he wanted to "revoke" his acceptance and "fight[ ] his case." (Filing No. 9 at 4). So ICE transferred him to its Omaha office for "re-process[ing]" and issued a Notice to Appear. (Filing No. 9 at 4).

of service to show cause why the petition should not be granted. The Federal Respondents[2] did so (Filing No. 7) and Calderon Rivera replied (Filing No. 12). The parties agreed to waive a hearing on Calderon Rivera's petition, and the Court deemed the matter submitted on their written arguments. *See* 28 U.S.C. § 2243.

## STANDARD OF REVIEW

"Habeas is at its core a remedy for unlawful executive detention." *Munaf v. Green*, 553 U.S. 674, 693 (2008). Federal courts have jurisdiction to hear habeas corpus claims by noncitizens challenging the constitutionality of their detention. *See Demore v. Kim*, 538 U.S. 510, 516-17 (2003); 28 U.S.C. § 2241(a). Calderon Rivera bears the burden to show that he is in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3); *Walker v. Johnston*, 312 U.S. 275, 286 (1941).

## DISCUSSION

The Court has previously concluded that noncitizens detained within the interior of the United States who have been present here for years are entitled to a bond hearing. *See, e.g., Sales Ambrocio v. Noem et al.,* 2025 WL 3295530, at *6 (D. Neb. Nov. 25, 2025); *Sanchez Lopez v. Jeffreys*, 2025 WL 3533875, at *3 (D. Neb. Dec. 9, 2025); *Angulo Urgiles v. Bondi et al.,* 2026 WL 295403 (D. Neb. Feb. 4, 2026); *Roldan Chang v. Noem et al.,* 2026 WL 357553 (D. Neb. Feb. 9, 2026). It reaches the same conclusion here based on its interpretation of the relevant statutory detention framework.

To implement its immigration policy, the Government must be able to decide (1) who may enter the country and (2) who may stay here after entering. *Jennings,* 583 U.S. at 285. "That process of decision generally begins at the Nation's borders and ports of entry, where the Government must determine whether a noncitizen seeking to enter the country is admissible." *Id*. Under 8 U.S.C. § 1225, a noncitizen who "arrives in the United States," or "is present" in this country but "has not been admitted," is treated as "an applicant for admission." *Id.* § 1225(a)(1).

---

[2] The Federal Respondents are all but Acting Warden of the McCook Detention Center Carolyn Sommer. (Filing No. 7 at 3 n.1). Acting Warden Sommer separately responded to the petition, declining to take a position on the substantive issues raised in the petition or whether the writ should be granted. (Filing No. 11 at 2).

Applicants for admission must "be inspected by immigration officers" to ensure that they may be admitted into the country consistent with U.S. immigration law. *Id.* § 1225(a)(3).

Applicants for admission fall into either of two categories, § 1225(b)(1) or § 1225(b)(2). Section 1225(b)(1) applies to an alien "who is arriving in the United States," § 1225(b)(1)(A)(i), or, subject to the discretion of the Attorney General, "has not been admitted or paroled into the United States, and who has not affirmatively shown, to the satisfaction of an immigration officer, that the alien has been physically present in the United States continuously for the 2-year period immediately prior to the date of the determination of inadmissibility under this subparagraph," § 1225(b)(1)(A)(iii). Section 1225(b)(2), by contrast, "is broader" and generally "serves as a catchall provision that applies to all applicants for admission not covered by § 1225(b)(1)[.]" *Id.* Noncitizens covered by § 1225(b)(2) are not eligible for bond during the pendency of removal proceedings. *See* § 1225(b)(2)(A) ("[I]n the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained for [removal proceedings]."); *Jennings,* 583 U.S. at 297 ("Read most naturally, §§ 1225(b)(1) and (b)(2) thus mandate detention of applicants for admission until certain proceedings have concluded . . . And neither § 1225(b)(1) nor § 1225(b)(2) says anything whatsoever about bond hearings.").

8 U.S.C. § 1226, by contrast, "generally governs the process of arresting and detaining" noncitizens found within the United States "pending their removal." *Jennings,* 583 U.S. at 288. Section 1226(a) "sets out the default rule: The Attorney General may issue a warrant for the arrest and detention of an alien 'pending a decision on whether the alien is to be removed from the United States.'" *Id.* (quoting § 1226(a)). And except as provided in § 1226(c),[3] the Attorney General "may release" a noncitizen detained under § 1226(a) "on . . . bond" or "conditional parole." *Id.* Federal

---

[3] Under § 1226(c), the "Attorney General shall take into custody any alien" who falls into one of several enumerated categories involving criminal offenses and terrorist activities. § 1226(c)(1). The Attorney General may release noncitizens in those categories "only if the Attorney General decides . . . that release of the alien from custody is necessary" for witness-protection purposes and "the alien satisfies the Attorney General that the alien will not pose a danger to the safety of other persons or of property and is likely to appear for any scheduled proceeding." § 1226(c)(2). Here, the Federal Respondents do not suggest Calderon Rivera is subject to mandatory detention under § 1226(c).

4

regulations provide that noncitizens detained under § 1226(a) receive bond hearings at the outset of detention. *Jennings,* 583 U.S. at 306; *see* 8 C.F.R. §§ 236.1(d)(1), 1236.1(d)(1).

In sum, "U.S. immigration law authorizes the Government to detain certain *aliens seeking admission into the country* under §§ 1225(b)(1) and (b)(2). It also authorizes the Government to detain certain aliens *already in the country* pending the outcome of removal proceedings under §§ 1226(a) and (c)." *Jennings,* 583 U.S. at 289 (emphasis added). The issue here is which provision applies to Calderon Rivera. He says § 1226(a) and asserts he is entitled to a bond hearing. The Federal Respondents say § 1225(b)(2) and assert he is not.

To resolve that dispute, the Court "begin[s] with the text" of the statutes. *Designworks Homes, Inc. v. Columbia House of Brokers Realty, Inc.*, 9 F.4th 803, 806 (8th Cir. 2021). But "[t]he definition of words in isolation . . . is not necessarily controlling in statutory construction. A word in a statute may or may not extend to the outer limits of its definitional possibilities." *Id.* (quoting *Dolan v. U.S. Postal Serv.*, 546 U.S. 481, 486 (2006)). The Court must also consider the statutory context in which the words in question appear, including both "the specific context in which th[e] language is used, and the broader context of the statute as a whole." *Id.* (quoting *Robinson v. Shell Oil Co.,* 519 U.S. 337, 341 (1997)).

Applying those principles here, the Court concludes that Calderon Rivera is detained under § 1226(a). The Supreme Court has characterized § 1225 and § 1226 as establishing two tracks—one that applies to noncitizens "seeking admission into the country" and one that applies to noncitizens "already in the country." *Jennings,* 583 U.S. at 289. Calderon Rivera falls within the latter track. *Cf. Zadvydas v. Davis*, 533 U.S. 678, 693 (2001) ("The distinction between [a noncitizen] who has effected an entry into the United States and one who has never entered runs throughout immigration law.").

Calderon Rivera is, without doubt, an "applicant for admission" as that term is defined in § 1225(a)(1). But because he lived in the United States for nearly ten years, the Court cannot say that he was also "seeking admission" here when ICE detained him. There must be a distinction between the two terms. *See Alvarez Ortiz v. Freden*, 2025 WL 3085032, at *7 (W.D.N.Y. Nov. 4, 2025) ("As numerous courts have observed, if all 'applicant[s] for admission' also are 'seeking admission,' then the words 'seeking admission' would be surplusage.") (collecting cases). "Seeking admission" has no statutory definition, so it takes its plain meaning. *Padilla v. Galovich*

5

*et al.,* 2025 WL 3251446, at *4 (W.D. Wis. Nov. 21, 2025). By that plain meaning, "seeking" implies action, and noncitizens like Calderon Rivera "who have been present in the country for years are not actively 'seeking admission.'" *Beltran Barrera v. Tindall*, 2025 WL 2690565, at *4 (W.D. Ky. Sept. 19, 2025); *Belsai D.S. v. Bondi*, 2025 WL 2802947, at *6 (D. Minn. Oct. 1, 2025) ("One who is 'seeking admission' is presently attempting to gain admission into the United States."); *Lopez-Campos v. Raycraft*, 2025 WL 2496379, at *6 (E.D. Mich. Aug. 29, 2025) ("'[S]eeking admission' . . . implies action – something that is currently occurring, and in this instance, would most logically occur at the border upon inspection.").

Further, Calderon Rivera's arrest warrant was, by its own terms, issued "pursuant to *sections 236* [8 U.S.C. § 1226] and 287 of the Immigration and Nationality Act." (Filing No. 9-2 at 1) (emphasis added); *see also Gomes v. Hyde*, 2025 WL 1869299, at *6 (D. Mass. July 7, 2025) (detailing "Congress's intent to establish a discretionary, rather than mandatory, detention framework for *noncitizens arrested on a warrant*") (emphasis added). And Calderon Rivera's Notice to Appear did not designate him as an "arriving alien," which is "the language used to define the scope of § 1225(b)(2)(A) in the implementing regulations." *Ochoa Ochoa v. Noem*, 2025 WL 2938779, at *6 (N.D. Ill. Oct. 16, 2025); *see* 8 C.F.R. § 235.3(c)(1). Documents issued by ICE, then, further support the conclusion that § 1226(a) applies to Calderon Rivera.

Summed up, § 1225(b)(2) only applies in the case of a noncitizen who is an "applicant for admission" and is *also* "seeking admission." Having lived in the United States for years before being detained, Calderon Rivera was not "seeking admission" here, so he falls outside of § 1225(b)(2)'s reach.

Taken to its logical conclusion, the Federal Respondents' reading of § 1225(b)(2)(A) would mean that it applies to *all* noncitizens present in the United States who have not been admitted. That cannot be. First, the Federal Respondents' arguments run headlong into *Jennings* and its language characterizing § 1226(a) as applying to "aliens already in the country," like Calderon Rivera was when ICE detained him. Nor is the Court persuaded that both § 1225(b)(2) and § 1226(a) "overlap" such that they could apply to one noncitizen at the same time. As then-Attorney General Bill Barr explained, "section [1225] (under which detention is mandatory) and section [1226(a)] (under which detention is permissive) can be reconciled only if they apply to different classes of aliens." *Matter of M-S-,* 27 I. & N. Dec. 509, 516 (2019); *see also Hernandez*

6

*Marcelo v. Trump*, 2025 WL 2741230, at *8 (S.D. Iowa Sept. 10, 2025) ("The correct distinction when assessing detention pending removal lies between those located in the United States and those located outside the United States.").

Further, the Federal Respondents' interpretation would render "recent congressional enactments superfluous." *Giron Reyes v. Lyons*, 2025 WL 2712427, at *5 (N.D. Iowa Sept. 23, 2025). Enacted just last year, the Laken Riley Act amended § 1226 by adding § 1226(c)(1)(E), which mandates detention for noncitizens who are inadmissible under §§ 1182(a)(6)(A) (noncitizens present in the United States without being admitted or paroled), 1182(a)(6)(C) (misrepresentation), or 1182(a)(7) (lacking valid documentation) and have been arrested for, charged with, or convicted of certain crimes. Section 1226(c)(1)(E)(i)–(ii). Because § 1182(a)(6)(A)(i) specifically refers to noncitizens "present in the United States without being admitted or paroled," and § 1226(c)(1)(E) requires detention without bond of those noncitizens[4] if they have also committed certain enumerated crimes, the recently created statutory exception would be redundant if § 1225(b)(2) also authorized their detention. "That is, because an alien present in the United States without admittance would be unlikely to prove that they are 'clearly and beyond a doubt entitled to be admitted,' ICE would never need to rely on § 1226(c)(1)(E) to detain them." *Pizarro Reyes v. Raycraft*, 2025 WL 2609425, at *5 (E.D. Mich. Sept. 9, 2025). Statutes should be read to avoid making any provision "superfluous, void, or insignificant." *TRW Inc. v. Andrews*, 534 U.S. 19, 31 (2001). Adopting the Federal Respondents' interpretation would do just that. Their interpretation is therefore untenable.

Finally, based on the language of the statute itself, the most natural interpretation of § 1225 is that it applies to noncitizens encountered as they are attempting to enter the United States or shortly after they gained entry without inspection. Start with the title: "Inspection by immigration officers; expedited removal of inadmissible *arriving* aliens; referral for hearing." (emphasis added); *Chernin v. United States*, 149 F.3d 805, 816 (8th Cir. 1998) ("[I]t is instructive to turn to the title of the statute to aid in resolving textual ambiguity."). Elsewhere too, Section 1225 "repeatedly refers to aliens entering the country." *Lopez v. Sheehan*, 2025 WL 3046183, at *4 (N.D. Iowa Oct. 30, 2025); *see* 8 U.S.C. § 1225(b)(1)(A)(i) (screenings for aliens "arriving in the United

---

[4] There is no suggestion here that Calderon Rivera is subject to mandatory detention under § 1226(c)(1)(E).

States"); *id.* § 1225(b)(2)(C) (noncitizens "arriving on land . . . from a foreign territory contiguous to the United States" may be returned to that territory pending removal proceedings); *id.* § 1225(d)(1) (immigration officers authorized to inspect "any vessel, aircraft, railway car, or other conveyance or vehicle in which they believe aliens are being brought into the United States"). The statute further addresses "crewm[e]n" and "stowaway[s]" in Section 1225(b)(2)(B). In short, Section 1225's text suggests it was "set up with arriving aliens in mind," not those who have already entered the country. *Lopez,* 2025 WL 3046183, at *4.

The Court recognizes that the Board of Immigration Appeals reached the opposite conclusion in *Matter of Yajure Hurtado*, 29 I. & N. Dec. 216 (BIA 2025). But the Court is not bound by that decision. *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 386 (2024); *Quito-Guachichulca v. Garland*, 122 F.4th 732, 753 (8th Cir. 2024) (noting that "[d]eference to the Board [of Immigration Appeals] . . . is now a relic of the past."). Nor does the Court find it particularly persuasive, especially given that it represents a departure from longstanding agency practice. *See* Inspection and Expedited Removal of Aliens; Detention and Removal of Aliens; Conduct of Removal Proceedings; Asylum Procedures, 62 Fed. Reg. 10,312, 10,323 (Mar. 6, 1997) ("Aliens who are present without having been admitted or paroled (formerly referred to as aliens who entered without inspection) will be eligible for bond and bond redetermination."). Indeed, "[f]or almost three decades, most noncitizens who entered without inspection that were placed in standard removal proceedings received bond hearings, unless subject to an exception." *Pizzaro Reyes,* 2025 WL 2609425, at *8.

The Court, in accordance with the majority of district courts[5] to consider this issue, therefore concludes that § 1226(a), not § 1225(b), applies to a noncitizen like Calderon Rivera who

---

[5] The Court acknowledges that the two appellate courts to weigh in on the issue—at least as of today's date—have reached different conclusions. The Seventh Circuit preliminarily concluded that the U.S. Department of Homeland Security was not likely to prevail on its argument that "§ 1225(b)(2)(A) covers any noncitizen who is unlawfully already in the United States as well as those who present themselves at its borders," *Castanon-Nava v. U.S. Dep't of Homeland Sec.*, 161 F.4th 1048, 1062 (7th Cir. 2025), while the Fifth Circuit "conclude[d] that the government's position is correct" based on its interpretation of § 1225(b)(2)(A), *Buenrostro-Mendez v. Bondi,* 166 F.4th 494, 498 (5th Cir. 2026). The Court is, of course, not bound by either decision, but does not find *Buenrostro-Mendez* persuasive for the reasons outlined above as well as those in Judge Douglas' dissent.

8

is detained within the United States. *Barrajas*, 2025 WL 2717650, at *4 (collecting cases). Thus, Calderon Rivera is entitled to a bond hearing, and his detention without one is unlawful.[6]

Just one issue[7] remains—the proper remedy. Calderon Rivera seeks either immediate release from custody or an order directing the immigration court to give him a bond hearing. (Filing No. 1 at 24). Only the latter is appropriate here. The unlawful aspect of Calderon Rivera's detention is the fact that he is entitled to a bond hearing but has not received one. His detention itself, however, is discretionary. *See* § 1226(a); *Ochoa Ochoa,* 2025 WL 2938779, at *8. To remedy that aspect of Calderon Rivera's detention, the Court will order that the Federal Respondents provide him with a bond hearing pursuant to § 1226(a) and 8 C.F.R. §§ 236.1(d)(1), 1236.1(d)(1) within seven days. Accordingly,

**IT IS ORDERED:**

1. Petitioner Jorge Calderon Rivera's petition for a writ of habeas corpus (Filing No. 1) is granted in part and denied in part, as set forth above.
2. The Federal Respondents shall provide Petitioner with a bond hearing pursuant to 8 U.S.C. § 1226(a) and the corresponding regulations within seven days of this order.
3. If the Federal Respondents do not provide Petitioner with a bond hearing under 8 U.S.C. § 1226(a) as required by this Order, Petitioner must be immediately released from detention.
4. Within fourteen days of the date of this Order, the parties shall provide the Court with a status update concerning the results of any bond hearing conducted pursuant to this Order, or if no bond hearing was held, advise the Court regarding Petitioner's release.

---

[6] Calderon Rivera also argues that he is entitled to relief as a member of the "Bond Eligible Class" certified by the court in *Bautista v. Santacruz*, 2025 WL 3713987 (C.D. Cal. Dec. 18, 2025), *judgment entered sub nom. Maldonado Bautista v. Noem*, 2025 WL 3678485 (C.D. Cal. Dec. 18, 2025). (Filing No. 1 at 21). But the Court need not parse those arguments given its conclusion that Calderon Rivera is individually entitled to a bond hearing under § 1226(a).

[7] As to Calderon Rivera's request for attorney's fees and costs under the Equal Access to Justice Act (Filing No. 1 at 24), he may move separately within thirty days of final judgment in this action to recover them. *See* 28 U.S.C. § 2412(d); 5 U.S.C. § 504.

5. A separate judgment will be entered.

Dated this 3rd day of March, 2026.

BY THE COURT:

_____
Susan M. Bazis
United States District Judge